UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

In re TRUSTEES OF CONNEAUT LAKE
PARK, INC.

    **Debtor**

_____

| | |
|---|---|
| **PARK RESTORATION, LLC,** | CIVIL ACTION No. 1:16-cv-00006-BJR |
|     Appellant and Cross-Appellee, | |
| | ORDER AFFIRMING IN PART AND REVERSING IN PART |
| v. | BANKRUPCTY COURT DECISION |
| **SUMMIT TOWNSHIP**, a municipal corporation; **THE TRUSTEES OF CONNEAUT LAKE PARK**, a charitable trust, Appellee and Cross Appellant; **CRAWFORD COUNTY**, a political subdivision, the **TAX CLAIM BUREAU OF CRAWFORD COUNTY**; and the **CONNEAUT SCHOOL DISTRICT**, Appellees. | |

_____

*Appeal from the United States Bankruptcy Court for the Western District of Pennsylvania Bankruptcy Case No. 14-11227-JAD; Adv. Proc. No. 15-010101-JAD Order Entered December 22, 2015*

_____

## I.    INTRODUCTION

This is a declaratory judgment action regarding the relative rights of the Trustees of

Conneaut Lake Park, Inc. (the "Debtor"), Park Restoration, LLC ("Park Restoration"), and

certain tax creditors of the Debtor (specifically, Summit Township, Crawford County, the Tax

1

Claim Bureau of Crawford County, and Conneaut School District (collectively, "the Taxing Authorities")) with respect to insurance proceeds in the amount of $611,000 from a casualty insurance policy on a building owned by the Debtor. On December 22, 2015, the United States bankruptcy court for the Western District of Pennsylvania determined that the Taxing Authorities are entitled to $478,260.75 of the insurance proceeds as payment for outstanding property taxes and that Park Restoration is entitled to the remaining principal balance of the proceeds after payment to the Taxing Authorities. Park Restoration appeals the decision to this Court and Debtor filed a cross-appeal. Having reviewed the parties' filings, the record of this case, and the relevant legal authority, this Court will affirm in part and reverse in part the bankruptcy decision. Specifically, this Court affirms that Debtor is not entitled to any of the insurance proceeds, but reverses the bankruptcy court's conclusion that the Taxing Authorities are entitled to a portion of the proceeds; instead, the insurance proceeds, in their entirety, must be awarded to Park Restoration. The reasoning for this Court's decision is as follows.

## II. BACKGROUND

The material facts of this case are not in dispute. *See* Dkt. No. 1, Ex. 5. Nor are they complicated. They are as follows: Debtor owns 55.33 acres of land in Crawford County that contains a number of amusement attractions, buildings, and other permanent fixtures. Pursuant to a written management agreement between Debtor and Park Restoration ("the Management Agreement"), Park Restoration operated an attraction located on Debtor's land. The attraction is commonly referred to as the Beach Club. The Beach Club is an historic 77-year old structure located on less than one acre of Debtor's 55.33 acre property. As such, while Debtor's full parcel of land has an assessed tax value of $152,195, the Beach Club itself has an assessed value of only $13,992 (*i.e.*, the Beach Club's assessed value is nine percent of the assessed value for the

2

entire property). Park Restoration did not have access to the remaining approximately 54.33 acres of Debtor's land.

The Management Agreement granted Park Restoration the right to operate the Beach Club for a period of twenty years commencing on November 24, 2008 in return for a portion of the profits generated by the Beach Club. In addition to managing the Beach Club, Park Restoration was required to repair, improve, and secure the building at its own expense. The Management Agreement did not give Park Restoration any type of ownership in the Beach Club; to the contrary, Debtor remained the sole owner of the Beach Club and the land on which it is located.

In connection with its operation of the Beach Club, Park Restoration purchased, and paid insurance premiums, for a casualty insurance policy on the Beach Club structure from Erie Insurance Exchange ("Erie"). The policy insured the structure for $611,000.[1] On August 1, 2013, the Beach Club was destroyed by fire, rendering it unusable for its intended purpose. Thereafter, Park Restoration submitted a claim for the insurance proceeds to Erie. Erie did not dispute the insurance claim; however, it informed Park Restoration that pursuant to 40 Pa. Cons. Stat. § 638, before Erie could pay on the claim, Park Restoration must first obtain a certificate from the treasurer for the municipality where the Beach Club is located. The certificate must indicate whether there are any delinquent taxes (in addition to other costs not relevant to this lawsuit) assessed against the Beach Club. According to Erie, if there are delinquent property taxes, Erie is required to deduct the amount of the delinquent taxes from the insurance proceeds and transfer the funds to the Taxing Authorities to be credited against the delinquent taxes.

---

[1] The policy also insured Park Restoration's personal property located at the structure. The insurance proceeds associated with this coverage are not in dispute.

At the time of the fire, Debtor owed back taxes on the entire 55.33 acre parcel in the amount of $478,260.75. The tax debt dated back to at least 1996. Therefore, Erie notified Park Restoration that it intended to deduct $478,260.75 from the $611,000 insurance proceeds to satisfy the outstanding tax obligation on Debtor's property. Park Restoration objected and Erie commenced an interpleader action in the Court of Common Pleas. The matter was transferred to the bankruptcy court after the Debtor instituted its bankruptcy action.[2]

The Taxing Authorities and Park Restoration each moved for summary judgment before the bankruptcy court. The Taxing Authorities argued that pursuant to 40 Pa. Cons. Stat. § 638, Erie was required to transfer $478,260.75 to the Taxing Authorities to satisfy Debtor's outstanding tax liability on the insured property before it could release the remainder of the insurance proceeds to Park Restoration. Park Restoration opposed the Taxing Authorities' motion and filed its own motion for summary judgment. Park Restoration argued that 40 Pa. Cons. Stat. § 638 is not applicable to the present situation, but instead, applies only to those situations in which the insured owns the insured property and, therefore, is financially responsible for the delinquent taxes. In other words, Park Restoration argued that because it did not own the Beach Club and because it is not financially responsible for Debtor's delinquent taxes, § 638 cannot be invoked to force Park Restoration to assume responsibility for the debt. To do so, Park Restoration argued, would constitute an unconstitutional taking in violation of both the constitution of the United States as well as Pennsylvania's constitution.[3]

---

[2] Erie was dismissed from the interpleader action on December 9, 2013, and as such, is not a party to the bankruptcy action or this appeal.

[3] The bankruptcy court certified the matter to the Attorney General of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. § 2403 because Park Restoration's claim to the insurance proceeds rests, in part, on a constitutional challenge to a Pennsylvania statute. The Commonwealth, through the Attorney General, subsequently filed an amicus brief in response to the issues raised by the parties.

Debtor also opposed Park Restoration's motion for summary judgment. Debtor argued that Park Restoration is not entitled to any of the insurance proceeds, even that portion which would remain after the proceeds were applied to the tax debt. Debtor claimed that it is the beneficiary of the insurance policy (as opposed to Park Restoration) because it (Debtor) owns the Beach Club.

The bankruptcy court granted partial summary judgment in favor of the Taxing Authorities and partial summary judgment in favor of Park Restoration. The bankruptcy court concluded that: (1) 40 Pa. Cons. Stat. § 638 unambiguously mandates that the delinquent taxes be deducted from the insurance proceeds; (2) because the statute was enacted prior to the date that the insurance was purchased, Park Restoration was held to be on notice that it did not have a protected property interest in the insurance proceeds; (3) there was no "taking" of a protected property interest in violation of the Takings Clauses in the federal and Pennsylvania constitutions; (4) the Taxing Authorities are entitled to $478, 260.75 of the insurance proceeds; (5) Debtor was not an insured beneficiary under the insurance policy, and (6) as such, the remaining $132,739.25 of the insurance proceeds belongs to Park Restoration.

## III. STANDARD OF REVIEW

When a district court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions *de novo*. Fed. R. Bankr. P. 8013; *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## IV. DISCUSSION

There are two appeals before this Court. First, Park Restoration challenges the bankruptcy court's construction of 40 Pa. Cons. Stat. § 638 and the constitutionality of the statute's application to this case. Park Restoration argues, for the first time on appeal, that

5

because the insured property—the Beach Club—only constitutes nine percent of the total tax assessed value of Debtor's 55.33 acre parcel, Park Restoration should only be responsible for nine percent of the total delinquent tax debt. Taking anymore, Park Restoration argues, would violate the Takings Clauses of the United States and Pennsylvania constitutions.

The Taxing Authorities urges this Court to disregard Park Restoration's "pro rata share" argument. They assert that because Park Restoration did not raise this argument before the bankruptcy court, the argument is deemed waived pursuant to the Federal Rules of Bankruptcy Procedure. It is not necessary for this Court to address the waiver issue, because, for the reasons stated below, this Court resolves Park Restoration's appeal without reaching Park Restoration's "pro rata share" argument.

The second appeal is brought by Debtor. It challenges the bankruptcy court's conclusion that Park Restoration is entitled to that portion of the insurance proceeds remaining after the Taxing Authorities recovered for the delinquent taxes. It claims that Park Restoration is not entitled to any of the proceeds because it does not have a financial interest in the insured property (*i.e.*, the Beach Club). Instead, Debtor argues, the proceeds should be paid to it as owner of the Beach Club.

The Court will first address Park Restoration's challenges to the bankruptcy court's decision and then it will turn to Debtor's challenges to the decision.

**A. Park Restoration's Challenge to the Bankruptcy Court's Decision**

*1. Individuals Generally Are Not Financially Responsible for the Debt of Third Parties*

It is a fundamental underpinning of our legal system that individuals generally are not held responsible for the debt of others. *See, e.g., United States v. Rodgers*, 461 U.S. 677, 697, 103 S. Ct. 2132 (1983); *Russell v. Clark's Ex'rs*, 11 U.S. 69 (1812) ("To charge one person with

6

the debt of another, the undertaking must be clear and explicit."). Here, the Taxing Authorities try to avoid the fundamental inequity of their claim by arguing that Park Restoration agreed to assume responsibility for Debtor's delinquent taxes when it purchased the insurance policy because 40 Pa. Cons. Stat. § 638 had already been enacted and was therefore incorporated into the policy. The Taxing Authorities base their argument on the following boilerplate language in the policy: "[t]his policy conforms to the laws of the state in which your principal office is located." Dkt. No. 10 at 3.

The Court is not persuaded by the Taxing Authorities' argument. In order to contractually foist the liability of another onto a contracting party, the contract must be sufficiently explicit to place the contracting party on reasonable notice that it is assuming the liability of another by entering into the contract. The above quoted boilerplate language fails this test for at least two reasons. First, the boilerplate language incorporates *all* Pennsylvania law, not just 40 Pa. Cons. Stat. § 638. This is significant because this means that the insurance policy also incorporated the fundamental principal that property taxes are the financial responsibility of the owner. *See*, *e.g.*, Black's Law Dictionary, Tax (10th ed. 2014) (property tax is: "[a] tax levied on the *owner* of property (esp. real property), usually based on the property's value.") (emphasis added); *North Philadelphia Trust Co. v. Heinel Bros*., 176 A. 692, 693 (Pa. 1934) ("[I]t is the policy of the law … to make the real owner pay the [property] tax."). Second, incorporating 40 Pa. Cons. Stat. § 638 into the policy does not offer Tax Authorities the relief they seek. This is because, as will be discussed in more detail below, the statute is ambiguous.

Accordingly, this Court concludes that Park Restoration did not agree to assume the Debtor's tax liability simply by purchasing an insurance policy on Debtor's property. Indeed, imposing such a liability on Park Restoration through such a tenuous means might give credence

to Park Restoration's constitutional challenges. However, the Court need not reach the constitutional issues because, as explained below, this Court finds 40 Pa. Cons. Stat. § 638 ambiguous.[4]

### 2. *40 Pa. Cons. Stat. § 638 Is Ambiguous*

40 Pa. Cons. Stat. § 638 is part of a comprehensive scheme that governs the rights and obligations of both insurance companies and their insured in the Commonwealth. Relevant to this lawsuit, the statute conditions an insurance company's ability to pay out fire insurance proceeds by providing that "[n]o insurance company…shall pay a claim of a named insured for fire damage to a structure located within a municipality…unless the insurance company…is furnished with a certificate pursuant to subsection (b) of this section…" 40 Pa. Cons. Stat. § 638 (a) (2015). Subsection (b)(1)(ii), in turn, provides that the certificate shall set forth whether there are any "delinquent taxes, assessments, penalties and user charges" assessed "against the property" as of the date of the fire damage. If there are outstanding "delinquent taxes, assessments, penalties and user charges" assessed against the property, subsection (b)(2)(ii) requires that the insurance company "transfer to the [municipality] treasurer an amount from the insurance proceeds necessary to pay the taxes, assessments, penalties, charges and costs as shown on the bill."

In this case, $478,260.75 in delinquent property taxes had been assessed against the Beach Club and the property on which it was located at the time it was destroyed by the fire. In the bankruptcy court's view, the foregoing statutory provisions unambiguously mandate that Erie transfer $478,260.75 from the insurance proceeds to the municipal treasurer in satisfaction of the delinquent tax debt. The bankruptcy court reached this decision by concluding that the

---
[4] In addition, imposing such significant liability on an innocent third party based on a contractual provision that the average lay person would not read may have the effect of an adhesion contract and raises serious equitable concerns.

8

unambiguous statutory provisions had been incorporated into the Erie insurance policy by reference and that Park Restoration agreed to be bound by the same when it purchased the insurance policy. Therefore, the bankruptcy court concluded, 40 Pa. Cons. Stat. § 638, as applied, is constitutional, and no taking occurred by virtue of its application to this case.

This Court respectfully disagrees that 40 Pa. Cons. Stat. § 638 is unambiguous. The polestar for interpreting a Pennsylvania statute is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa. Cons. Stat. Ann. § 1921(a)(2015); *White v. Lord Abbett & Co. LLC*, 553 F.3d 248, 254 (3d Cir. 2009). Therefore, "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S. Ct. 1917, 1935, 44 L. Ed. 2d 539 (1975) (Powell, J., concurring); *see also*, *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (a court must first "determine whether the language at issue has a plain and unambiguous meaning.")). The court's inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Dobrek*, 419 F.3d at 623 (citing *Barnhart*, 534 U.S. at 450). However, the statute is ambiguous if the disputed language is "reasonably susceptible of different interpretations." *Dobrek,* 419 F.3d at 264 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985)). If the statute is ambiguous, the court then must employ other traditional tools of statutory interpretation. *In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 560 (E.D. Pa. 2009).

Thus, this Court must first determine whether 40 P.S. § 638 has a "plain and unambiguous meaning." *Dobrek*, 419 F.3d at 263. This Court concludes that it does not. The Court reaches this conclusion because the statute uses the terms "named insured" and "the

insured property owner" interchangeably. As set forth above, the statute is a step-by-step procedure that the insured party must follow in order to obtain the insurance proceeds. In subsections (a) and (b)(1), the statute refers to the insured party as the "named insured." However, in subsection (b)(2)(i), the statute refers to the same insured party as "the insured property owner." Then, inexplicably, the statute reverts to referring to the insured party as simply the "named insured" in the remaining subsections. A straight-forward reading of the statute demonstrates that it is referencing the same party when it refers to the "named insured" and "the insured property owner." Indeed, it makes no sense to read a previously unreferenced third party (*i.e.*, an insured property owner) into the statute and then never reference the third party again in the remainder of the statute. The only logical way to read this inconsistency is to assume that the General Assembly meant that the "named insured" and "the insured property owner" are synonymous.

Of course, this inconsistency in the statute is significant. If, for the purposes of the statute, the insured party means the "named insured" then, arguably the statute is applicable to the present situation. If, however, the term insured party means the "insured property owner," then the statute is not applicable to this case because the parties concede that Park Restoration does not own the Beach Club or the property on which it is located. Therefore, this Court concludes that 40 Pa. Cons. Stat. § 638 is "reasonably susceptible of different interpretations." *Dobrek*, 419 F.3d at 264.

### 3. *The Legislative History Demonstrates that the General Assembly Intended 40 Pa. Cons. Stat. § 638 to Only Apply to Insured Property Owners*

Having determined that the statute is ambiguous, this Court must attempt to discern the Legislature's intent using the tools of statutory construction. *United States v. Cooper*, 396 F.3d 308, 310 (3d. Cir. 2005) (citing *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d. Cir. 2000)). A

frequent tool for parsing out ambiguity in the language of the statute is legislative history. It is recognized that legislative history is a "useful and appropriate tool for [an] inquiry into [legislative] intent" when the plain statutory text is ambiguous. *Francis v. Mineta*, 505 F.3d 266, 270–71 (3d Cir. 2007); *In re Philadelphia Newspapers*, 418 B.R. at 561 (same). In this case, the legislative history reveals that 40 Pa. Cons. Stat. § 638 was introduced to address "a problem that plague[d] many urban areas in the Commonwealth," namely the situation where a building is destroyed by fire "and the *property owner* walks away with the insurance proceeds and avoids the costs that may be incurred to protect the public from that property…" 1992 Pa. Legis. Journal, House, p. 1573 (June 29, 1992) (emphasis added). One Legislator specifically stated that the "reason that this legislation has been offered" is because property owners are frequently delinquent on their property taxes, so that "the municipality often will take these properties over for taxes, and the cost to the taxpayer then is not only the lost taxes but to pay to have the property demolished." *Id*. Meanwhile, "the *owners* of these properties take the [insurance] money and run." *Id*. (emphasis added). The legislative history notes that 40 Pa. Cons. Stat. § 638 solves this problem because before an insurance claim can be paid, the insured "[has] to go to the municipality and get a certificate indicating that *they* ha[ve] no back taxes…" (emphasis added). In other words, the purpose of this statute was to ensure that a property owner who owed delinquent property taxes did not walk away with the insurance proceeds without first satisfying the outstanding tax debt.

Another way of describing the Legislature's intent in adopting 40 P.S. § 638 is that it sought a means for collecting delinquent taxes in the event that the collateral for the taxes (*i.e*., the property) was destroyed by fire. If a property owner is delinquent on taxes, the Taxing Authorities' ultimate recourse is to place a lien on the property and foreclose on the lien. If,

11

however, the property is destroyed by fire, the Taxing Authorities lose their collateral for the tax debt. Recouping the delinquent taxes from the insurance proceeds is a way of insuring that the municipality is paid even if the property is destroyed. This, of course, is consistent with the statute's stated purpose, which is "to deter the commission of arson and related crimes, to discourage the abandonment of property and to prevent urban blight and deterioration." *Id*. at § 638(k). If a property owner cannot escape its financial liability through the commission of arson, the property owner is disincentivized to commit arson.

### *4. Property Taxes Are the Responsibility of the Property Owner*

What is more, the statute cannot be interpreted in isolation, but must be read against other general legal principles for it is axiomatic that the General Assembly does not intend an absurd or unreasonable result. *See* 1 Pa. Cons. Stat. Ann. § 1922(1) (2015). As the Commonwealth concedes in its amicus brief, under Pennsylvania law, the owner of property is the party responsible for taxes assessed against the property. Dkt. No. 17 at 4 (citing *Appeals of Baltimore & O.R.R.*, 175 A.2d 841, 843-844 (Pa. 1961)) (noting that "[s]ince Park Restoration does not own [the Debtor's parcel] is bears no *direct* reasonability for paying the real estate taxes assessed against [it.]") (emphasis in original). As such, Pennsylvania courts have consistently held that the property owner is the party responsible for paying real estate taxes, even for instance, if another party is in possession of the property. *See*, *e.g*., *Bergdoll v. Pitts*, 41 Pa. Super. 257, 258 (1909) ("The party who at law is responsible for the payment of taxes assessed on real estate is the real owner…The fact that he is out of possession and that another is enjoying the rents, issues and profits of the property is no reason why its real owner should escape the burden of paying the taxes on it."); *North Philadelphia Trust Co.*, 172 A. at 693 ("[I]t is the policy of the law … to make the real owner pay the tax."); *Pa. State Bldg. & Constr. Trades Council, AFL-CIO v.*

*Prevailing Wage Appeals Bd.*, 808 A.2d 881, 886 (Pa. 2002) ("owner of the …buildings, was responsible for paying the real estate taxes on the property to the taxing bodies."); *Nesley v. Rockwood Spring Water Co., Inc.*, 428 A.2d 161, 162 (Pa. Super. Ct. 1981) (holding that "[t]he general rule is that, in the absence of an agreement to the contrary, the lessor is responsible for" payment of taxes assessed against the property); *Marcus Hook Devel. Park, Inc. v. Bd. of Assessment Appeals of Delaware Cnty.*, 449 A.2d 70, 73 (Pa. Commw. Ct. 1982) (holding that lessee of real estate was not the "real owner" for tax purposes despite the fact that the lessee had a contractual obligation to pay the taxes on the property); 8A Keith A. Braswell, Summ. Pa. Jur. 2d Property § 26:134 (April 2016) (same).

There is nothing in 40 Pa. Cons. Stat. § 638 to suggest that the General Assembly intended to depart from Pennsylvania's well-establish principle that property taxes are the financial responsibility of the property owner. To the contrary, the fact that the statute equates the "named insured" with "the insured property owner" in subsection (b)(2)(i) suggests that the Legislature intended for the statute to apply only in those circumstances in which the named insured owned the insured property. This interpretation of the statute is substantiated by the legislative history that clearly demonstrates that the purpose of the statute was to dissuade "property owner[s]" from "tak[ing] the money and run[ning]." 1992 Pa. Legis. Journal, House, p. 1573 (June 29, 1992).

Based on the foregoing, this Court concludes that the drafters of 40 Pa. Cons. Stat. § 638 did not intend to depart from basic principles of equity and tax law and instead intended for the statute to apply only in those situations where the insured party owns the insured property, and as

such, any outstanding tax liability is the responsibility of the property owner. Therefore, the statute cannot be used to shift Debtor's tax burden onto Park Restoration.[5]

### B. Debtor's Challenges to the Bankruptcy Court's Decision

#### 1. *Park Restoration Has an Insurable Interest in the Beach Club*

As discussed above, Debtor argues that the bankruptcy court committed reversible error when it determined that Park Restoration has an insurable interest in the Beach Club. Dkt. No. 21 at 11. Debtor claims that in order to recover under the insurance policy, Park Restoration must have a "possessory interest" in the Beach Club and the bankruptcy court erred when it determined "that [Park Restoration] held a possessory interest in the Beach Club akin to a leasehold or license." *Id*. at 14. Debtor argues that Park Restoration did not have a possessory interest in the Beach Club; rather, Park Restoration simply had a contractual right to "manage and operate" the property. *Id*. at 15. According to Debtor, "[t]he fact that [Park Restoration] has a financial interest in personal property at the Beach Club or in the income that might have been generated by future Beach Club operations is irrelevant" to whether Park Restoration is entitled to the insurance proceeds. *Id*. at 14. *Id*.[6]

Debtor's argument rests on the faulty premise that Park Restoration must have a possessory interest in the Beach Club in order to have an insurable interest in the structure. This simply is not the law in Pennsylvania. Park Restoration need not have a possessory interest in the

---

[5] While not raised by Park Restoration, this Court also notes that the doctrine of laches may be applicable in this case given that Debtor's outstanding tax liability dates back to at least 1996. *Gruca v. U.S. Steel Corp*., 495 F.2d 1252, 1258 (3d. Cir. 1974) ("Laches conceptualizes the inequity which may inhere when a stale claim is permitted to be enforced."); *Muscianese v. U.S. Steel Corp*., 354 F. Supp. 1394, 1399 (E.D. Pa. 1973) ("The doctrine of laches is an equitable doctrine based on public policy which requires the discouragement of stale demands. Laches is not a mere lapse of time but is principally a question of the inequity of permitting a claim to be enforced where some change in condition has taken place which would make enforcement of the claim unjust.").

[6] Debtor further notes that the insurance policy was organized by financial interest and covered property category. Cover 1 insured the building structure, Coverage 2 insured the personal property located in the structure, and Coverage 3 insured the income generated at the Beach Club. Park Restoration opted to purchase Coverage 1 and 2 only.

14

Beach Club in order to have an insurable interest in the structure. *See, e.g., Commonwealth v. Rodebaugh*, 519 A.2d 555, 563 (Pa. Commw. Ct. 1986) (Pennsylvania law provides that "a person need not have any property interest in the subject matter insured and that a person [has] an insurable interest in property 'if he holds such relation to the property that its destruction by the peril insured against involves pecuniary loss to him'"); *Kellner v. Aetna Cas. & Surety Co.*, 605 F. Supp. 331, 333 (M.D. Pa. 1984) (noting that it "is an elementary principal of insurance law that an insurable interest exists in any party who would be exposed to financial loss by the destruction of certain property."). As the bankruptcy court points out "[t]he resolution of the issue of whether Park Restoration held an insurable interest was not premised upon the precise nature of Park Restoration's property interest. Rather, it was premised upon a determination of whether Park Restoration held such a relationship with the property 'that its destruction by the peril insured against involves pecuniary loss to [Park Restoration].'" Dkt. No. 25, Ex. 1 at 13 (quoting *A.K. Nahas Shopping Ctr., Inc. v. Reitmeyer*, 161 B.R. 931 (Bankr. W.D. Pa. 1993) (citing *Rodebaugh*, 519 A.2d at 563). The bankruptcy court determined that Park Restoration had an insurable interest in the Beach Club derived from "its undisputed right to long term possession and use of the Beach Club." *Id.* at 14. This Court agrees. Not only did Park Restoration stand to suffer pecuniary loss from its loss of income related to operating the facility, but per the terms of the Management Agreement, Park Restoration was obligated to invest its own money into the Beach Club facilities. Clearly, the destruction of the Beach Club caused Park Restoration "pecuniary loss."

### 2. *Debtor Is Not Entitled to Any Portion of the Insurance Proceeds*

Next, Debtor argues that even if this Court were to determine that Park Restoration has an insurable interest in the Beach Club, Debtor is still entitled to the insurance proceeds because it

owns the Beach Club. According to Debtor, the "fact that [it] is not a named insured under the policy does not preclude its recovery of the [i]insurance [p]roceeds for three reasons." *Id*. at 9. First, Debtor claims that the policy contemplates that Erie may have to pay the proceeds to Debtor and not Park Restoration. Second, Debtor argues that it is the third party beneficiary of the insurance policy and therefore entitled to the proceeds. Lastly, Debtor argues that it is the entity that suffered the insured loss, so it should be awarded the proceeds. The Court rejects Debtor's arguments for the following reasons.

> a. *The Insurance Policy Language Does Not Dictate that the Proceeds Be Paid to Debtor*

As an initial matter, this Court notes—and Debtor concedes—that Debtor is not listed as the named insured under the policy. Nevertheless, Debtor argues that it is entitled to the insurance proceeds because Section 10 of the policy "contemplates" payment of the insurance proceeds to the owner of the insured property regardless of whether the owner is a named insured. Section 10 states:

> If we are called upon to pay a "loss" for property of others, we reserve the right to adjust the "loss" with the owner. If we pay the owner, such payments will satisfy your claims against us for the owner's property.

Dkt. No. 10, Ex. A at 37, Art. X (Commercial Property Conditions), § 10. According to Debtor, this section applies "to the situation at issue here, i.e. where the loss to the covered property is suffered by someone other than the named insured." Dkt. No. 21 at 20. Debtor misconstrues the meaning of Section 10. Section 10 is meant to protect Erie from having to pay twice under the policy. In the event Erie was obligated to reimburse a third party for a loss, then, per Section 10, Erie would not also be obligated to pay Park Restoration for the same loss. However, Section 10 cannot be used as a means to convert Debtor into the named insured under the policy. As the bankruptcy court correctly pointed out, Debtor has "not pointed to any provision in the policy

where it is the named insured; nor has the Debtor cited any compelling legal authority upon which [it] bases its claim of entitlement to the [i]nsurance [p]roceeds." Dkt. No. 1, Ex. 5 at 12. Accordingly, this Court agrees with the bankruptcy court that Section 10 does not afford Debtor the relief it seeks.

### b. *Debtor Is Not a Third Party Beneficiary of the Insurance Policy*

Nor is this Court persuaded by Debtor's claim that it is an intended third party beneficiary of the insurance policy. Under Pennsylvania law:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires v. Hanover Fire Ins. Co.*, 364 Pa. 52, 70 A.2d 828 (1950), unless, [1] the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties; and [2] the performance satisfies an obligation of the promisee to pay money to the beneficiary, or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Two Rivers Terminal, L.P. v. Chevron USA*, 96 F. Supp. 2d 432, 450 (2000) (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992)). Debtor fails to cite to any provision in the insurance contract that expresses an intention to benefit Debtor, and thus does not satisfy the *Spies* test. *See Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 401 (E.D. Pa. 2002) (citing *Spires*, 70 A.2d at 828 ("To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract.") (emphasis in original).

Under the second test, it is left up to the discretion of this Court to decide if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties." *Blue Mountain*, 246 F. Supp, 2d at 401 (citing *Scarpitti*, 609 A.2d 150). The Court does not find that the circumstances of this case compel recognizing

Debtor as a third party beneficiary under the insurance policy. First, Park Restoration is not indebted to Debtor. Debtor half-heartedly argues that under section seven of the Management Agreement, Park Restoration was required to indemnify Debtor for the loss it suffered due to the destruction of the Beach Club. *See* Dkt. No. 21 at 21 (claiming that Park Restoration must hold Debtor harmless and indemnify it from any loss that is the result of Park Restoration's use, misuse, occupancy, possession or abandonment of the Beach Club). However, section seven of the Management Agreement simply requires Park Restoration to hold harmless and indemnify Debtor for any losses claimed by third parties. Indeed, this section required Park Restoration to maintain "public liability insurance" with Debtor listed as an "additional named insured." Dkt. No. 9 at 50. There is no allegation in this case that a third party has brought a claim against Debtor; therefore, section seven is not applicable to this case. Furthermore, even if section seven could be read to apply to losses directly suffered by Debtor, there has been no showing that the fire was the result of Park Restoration's use, misuse, occupancy, possession or abandonment of the Beach Club. As there is no indication in the contract that Park Restoration and Erie intended Debtor to be the beneficiary of the insurance policy and there exists no compelling circumstances that would warrant finding otherwise, the Court holds that Debtor is not a third party beneficiary here.

### c. *Debtor Is Not the Only Party that Suffered a Loss*

Debtor's final argument is that it "is the only party that suffered the insured loss," so it is entitled to the remainder of the insurance proceeds after payment to the Taxing Authorities. Once again, Debtor's argument is unavailing. As has already been discussed above, Park Restoration suffered a pecuniary loss when the Beach Club was destroyed. The relief Debtor seeks would bring about the result that through the proceeds of an insurance policy that was procured and

paid for by another, Debtor would have all of its debt extinguished and would pocket the remaining $132,739.25. The law does not require such an unjust result.[7]

## V.  CONCLUSION

For the foregoing reasons, the Court affirms in part and reverses in part the bankruptcy court's decision. Specifically, the Court hereby concludes that:

(1) The bankruptcy court's grant of the Taxing Authorities' summary judgment motion is REVERSED;

(2) The bankruptcy court's denial of Park Restoration's summary judgment motion is REVERSED;

(3) Park Restoration is entitled to the full amount of the insurance proceeds; and

(4) The bankruptcy court's decision that Debtor is entitled to no part of the insurance proceeds is AFFIRMED.

Dated this 4th day of May, 2016.

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[7] Debtor also complains that Park Restoration is being paid proceeds in excess of the value of Park Restoration's financial interest. Given that this Court has already determined that Debtor is not a party to, nor a third party beneficiary of, the insurance policy, Debtor lacks standing to raise this claim. *See*, *e.g.*, *Ryan v. Traveler Indem. Co.*, 2013 WL 3289075, at *3 (E.D. Cal. June 28, 2013); *Graphia v. Balboa Ins. Con.*, 517 F. Supp. 2d 854, 859 (E.D. La. 2007).